# Exhibit B

**Exhibit B**          **Exhibit B**          **Exhibit B**

STATE OF NEW YORK
SUPREME COURT    COUNTY OF MONROE

MICHAEL SAMUELS, as Administrator of
THE ESTATE OF ORLANDO SAMUELS,

**COMPLAINT**

Plaintiff,

Index No. 3985-09

-vs-

March 23, 2009

COUNTY OF MONROE, THE MONROE COUNTY
SHERIFF'S DEPARTMENT, PATRICK O'FLYNN
as the Monroe County Sheriff, RONALD HARLING,
DEPUTY NEAL DESANTI, DEPUTY T. ROE,
DEPUTY A. LEISENRING, CORRECTIONAL
MEDICAL SERVICES, INC., MICHAEL LATUNJI, M.D.,
NURSE J. TRIESKY, NURSE A. HOLMAN,
NURSE AGRICOLTOSO, NURSE L. LABAR
and NURSE S. VERSTREATE,

Defendants.

2009 MAR 24  PM 1:39
MONROE COUNTY CLERK

RECEIVED

Plaintiff, Michael Samuels, as administrator of the estate of Orlando Samuels, by and through

his attorneys, Valerio & Kufta, P.C., as and for his Complaint against defendants, alleges as follows:

## PARTIES

1.      Plaintiff resides in the State of New York, County of Monroe and has been duly

appointed as Administrator of the Estate of Orlando Samuels (**Exhibit A**).

2.      At all times relevant to this complaint, plaintiff's decedent, Orlando Samuels

(**hereinafter "decedent"**), was an inmate at the Monroe County Jail located at 130 Plymouth Avenue

South, Rochester, New York.

3.      Upon information and belief, at all times hereinafter mentioned, Defendant County of

Monroe was and is a municipal corporation organized and existing by, through and under the laws of

the State of New York.

4.      Upon information and belief, at all times hereinafter mentioned, Defendant Patrick O'Flynn was and is the Monroe County Sheriff ("**Sheriff O'Flynn**"), an elected official, having custody of the Monroe County Jail, and is in charge of the operation and administration of the Monroe County Sheriff's Department.

5.      Upon information and belief, at all times herein after mentioned, Defendant Ronald Harling was the superintendent of the Monroe County Jail ("**Superintendent Harling**") charged with assisting Sheriff O'Flynn in the operation, management, maintenance and control of the Monroe County Jail.

6.      Upon information and belief, at all times relevant herein, Neal Delasanti, T. Roe, and A. Leisenring were and are Monroe County Sheriff's Deputies, correctional officers, and/or employees of the County of Monroe and/or Sheriff O'Flynn, and worked in the Monroe County Jail at the time of decedent's incarceration and death in May 2007.

7.      Upon information and belief, at all times hereinafter mentioned, Correctional Medical Services, Inc. is a foreign corporation licensed to conduct business in the State of New York.

8.      Upon information and belief, Michael Latunji, M.D. and Nurses Triesky, Holman, Agricoltoso, LaBar and Verstreate were employed by Correctional Medical Services, Inc. and worked in the Monroe County Jail facility in which plaintiff's decedent was an inmate.

9.      Upon information and belief, at all times relevant herein, Defendant County of Monroe, together with Sheriff O'Flynn and Superintendent Harling, operated, maintained, managed and controlled the Monroe County Jail, as well as the Sheriff's deputies, correctional officers, and other employees and staff within the Monroe County Jail.

10.     Upon information and belief, defendants County of Monroe and Sheriff O'Flynn entered into a contract with defendant Correctional Medical Services, Inc., to provide health care

2

services and medical treatment to the inmates who occupy the Monroe County Jail, and that said contract was in full force and effect at the time of decedent's death.

## PROCEDURAL BACKGROUND

11.     That plaintiff's decedent, Orlando Samuels, died on May 5, 2007.

12.     That on or about January 28, 2008, Michael Samuels was appointed guardian of the property of the infant Dorisha A. Samuels, the decedent's sole distributee.

13.     That on or about April 21, 2008, Michael Samuels was appointed administrator of the estate of Orlando Samuels.

14.     That on or about July 16, 2008, a Verified Notice of Claim was duly served upon the County of Monroe and the Monroe County Sheriff.

15.     That said Notice of Claim and Notice of Intention to Sue was duly served upon the County and the Sheriff within 90 days after plaintiff's appointment as Administrator of the Estate of Orlando Samuels.

16.     That the plaintiff has duly submitted to a deposition pursuant to General Municipal Law §50-h, conducted on behalf of the defendants, on October 30, 2008.

17.     That more than thirty (30) days have elapsed since the service of the Notice of Claims upon the defendants and defendants have failed, neglected and refused to pay, settle, compromise or adjust to claims of the plaintiff herein.

18.   That the within action was commenced by the filing of a Summons and Complaint within one year and ninety days of plaintiff's appointment as guardian of the property of Dorisha Samuels and within two (2) years of the date of decedent's death.

19.   That the plaintiff has duly complied with all of the conditions precedent to the commencement of this action.

## FACTUAL BACKGROUND

20.   Plaintiff's decedent was an inmate at the Monroe County Jail from April 27, 2007 through the date of his death on May 5, 2007. Plaintiff's decedent's inmate number was 290202.

21.   At the time of his commitment to the jail on April 27, 2007, defendants knew or should have known (based on prior incarcerations) that plaintiff's decedent had been prescribed and was taking various medications to control a heart condition.

22.   That at the time of his incarceration on April 27, 2007, a medical screening was performed in which it was noted that decedent had a heart condition, high blood pressure and high cholesterol, and that he took the medications nitroglycerin, enalapril, lipitor, aspirin and isosorbide to control these conditions.

23.   That other than his nitroglycerin medication, which he brought with him at the time of his incarceration, plaintiff's decedent was never provided with any of the other medications that he required to control his heart condition.

24.   That upon information and belief, between April 27, 2007 and May 5, 2007, plaintiff's decedent made repeated requests for his medication but no medication was provided to him.

4

25.     That upon information and belief, on or about May 2 and/or May 3, 2007, decedent approached Deputy T. Roe and advised him that he had submitted a sick call request because he needed medication, yet no medical assistance or medication was provided in response to this request.

26.     That upon information and belief, on May 4, 2007, Dr. Latunji wrote orders for decedent to receive medications including Imdur, EC-aspirin, Lisinopril, Zocor and Nitroglycerin, but the medications were never provided to the decedent.

27.     That upon information and belief, on May 5, 2007, shortly after 7:00 a.m., decedent complained to Deputy A. Leisenring that he had chest pain and needed medical assistance.

28.     That upon information and belief, at approximately 7:12 a.m., nurse LaBar responded to decedent and called the booking office to report the situation to a registered nurse.

29.     That upon information and belief, nurse Holman received the call and instructed nurse LaBar to transport decedent to booking for a nursing assessment.

30.     That upon information and belief, Deputy Leisenring and nurse LaBar then directed decedent to walk to booking, rather than transport him by wheelchair or other conveyance.

31.     That upon information and belief, at approximately 7:20 a.m., decedent arrived at the booking office and was attended to by nurses Verstreate, Triesky, Holman and Agricoltoso.

32.     That upon information and belief, shortly thereafter, Dr. Latunji telephoned the booking office and instructed that decedent be given a dose of aspirin, but there is no record that the medication was ever given.

5

33.     That upon information and belief, decedent collapsed at approximately 7:30 a.m. and an attempt to revive him with an AED was unsuccessful, due to the fact that the battery in the device was defective.

34.     That upon information and belief, decedent was taken by ambulance to the emergency room at Strong Memorial Hospital, where he was pronounced dead at 8:15 a.m.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (Negligence)

35.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 34, with the same force and effect as if fully set forth herein.

36.     That the negligence of the defendants included, but is not limited to, failing to provide decedent with the necessary medications to control his heart condition, failing to respond to his requests that he be provided with his medications, failing to provide a timely medical evaluation in response to his requests and in accordance with proper procedure, failing to properly train and supervise its staff, employees and/or agents, and failing to provide proper and timely emergency medical care in response to decedent's acute medical emergency on May 5, 2007.

37.     That Defendants were further negligent in failing to maintain the AED device in proper working order, with the result that it could not be used at the time it was needed to revive decedent.

38.     As a result of the foregoing, plaintiff's decedent suffered conscious pain and suffering and death, and his distributees suffered pecuniary damages, including loss of parental guidance, in amounts that exceed the jurisdictional limits of the lower courts; and damages are sought against all defendants and punitive damages are sought against all defendants except the County of Monroe.

6

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (Medical Malpractice)

39.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 38, with the same force and effect as if fully set forth herein.

40.     That upon information and belief, at all times hereinafter mentioned, Defendants County of Monroe, Sheriff O'Flynn, Superintendent Harling and Correctional Medical Services, Inc. controlled and supervised the physicians, nurses, servants, employees and personnel in and about the Monroe County Jail, who rendered medical treatment, care and services to plaintiff's decedent.

41.     That upon information and belief, Defendants County of Monroe, Sheriff O'Flynn, Superintendent Harling and Correctional Medical Services, Inc., employed or contracted with, doctors, nurses and other medical care providers to work in the Monroe County Jail, who were charged with providing medical care to plaintiff's decedent.

42.     That at all times relevant herein, Defendants County of Monroe, Sheriff O'Flynn, Superintendent Harling and Correctional Medical Services, Inc., furnished doctors, nurses and related medical care providers in the Monroe County Jail, including but not limited to Dr. Latunji, Nurse Triesky, Nurse Holman, Nurse Agricoltoso, Nurse LaBar and Nurse Verstreate, who the Defendants held out to be an adequate and competent medical staff to provide medical care and treatment to the population of the Monroe County Jail in accord with the accepted standards of medical care and practice in the community.

43.     That Defendants, through the doctors, nurses and related medical care providers and staff, failed to exercise reasonable care and failed to follow acceptable medical practices in the treatment of plaintiff's decedent, including, but not limited to, failing to provide him with his necessary medications upon his incarceration, failing to have him seen by a doctor on a timely basis,

failing to provide him with his medication in response to his requests and medical needs, and failing to timely and properly respond to his complaints of chest pain.

44.     That the acts of Defendants, their agents, servants and/or employees complained of herein were wanton, reckless and in total disregard for the health, safety and welfare of the inmates at the Monroe County Jail, and more particularly, plaintiff's decedent, and constituted medical malpractice and gross negligence.

45.     As a result of the foregoing, plaintiff's decedent suffered conscious pain and suffering and death, and his distributees suffered pecuniary damages, including loss of parental guidance, in amounts that exceed the jurisdictional limits of the lower courts; and damages are sought against all defendants and punitive damages are sought against all defendants except the County of Monroe.

## AS AND FOR A THIRD CAUSE OF ACTION
### (42 U.S.C. S. § 1983)

46.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 45, with the same force and effect as if fully set forth herein.

47.     The Defendants were under a duty to ensure that the inmates of the Monroe County Jail were provided with appropriate, timely, and necessary medical treatment.

48.     At all times herein mentioned, upon information and belief, the policies in place were inadequate to ensure that inmates received appropriate, timely and necessary medical treatment.

49.     That plaintiff's decedent's need for numerous medications to control his heart condition was known to Defendants based on decedent's prior incarcerations, the medical screening for the most recent incarceration, and decedent's requests that he be provided with medications, yet no medications were ever provided to decedent.

8

50.     Upon information and belief, Defendants' refusal and failure to provide Orlando Samuels with adequate medical care, treatment and medications and their failure to create a policy and/or hire a competent medical provider that would ensure that inmates received adequate medical care, deprived Orlando Samuels of a right, privilege or immunity secured by the Constitution or laws of the United States and were willful violations, performed under color of law, of Orlando Samuels' constitutional and statutory rights as protected by 42 U.S.C. §1983.

51.     As a direct and proximate result of the foregoing, plaintiff's decedent suffered conscious pain and suffering and death, and his distributees suffered pecuniary damages, including loss of parental guidance, in amounts that exceed the jurisdictional limits of the lower courts; and damages are sought against all defendants and punitive damages against all defendants except the County of Monroe.

**WHEREFORE**, plaintiff demands judgment against the defendants in an amount that exceeds the jurisdictional limits of the courts below, together with costs and disbursements, and together with any other relief the Court deems just, including an award for punitive damages against all defendants except the County of Monroe.

VALERIO & KUFTA, P.C.

By: _____
        Mark J. Valerio, Esq.
Attorneys for Plaintiff
400 Andrews Street, Suite 620
Rochester, New York 14604
(585) 442-1040

9

**Exhibit A**

*On the Date Written Below LETTERS are Granted by the Surrogate's Court, State of New York as follows:*

**File #: 2008-373**

Name of Decedent:    **Orlando Samuels**                    Date of Death: **May 5, 2007**

Domicile of Decedent:   **County Of Monroe**

Fiduciary Appointed:    **Michael Samuels**
Mailing Address          130 Milford Street Apt. B-6
                         Rochester NY 14615

Letters Issued:        **LETTERS OF ADMINISTRATION**

Limitations:           **NONE**

WITH RESPECT TO THE PROSECUTION OR ENFORCEMENT OF A CAUSE OF ACTION ON BEHALF OF THE ESTATE, NO FIDUCIARY NAMED ABOVE MAY ENFORCE ANY JUDGMENT OR RECEIVE ANY FUNDS WITHOUT FURTHER ORDER OF THIS COURT

THESE LETTERS, granted pursuant to a decree entered by the court, authorize and empower the above-named fiduciary or fiduciaries to perform all acts requisite to the proper administration and disposition of the estate/trust of the Decedent in accordance with the decree and the laws of New York State, subject to the limitations and restrictions, if any, as set forth above.

Dated: **April 21, 2008**



IN TESTIMONY WHEREOF, the seal of the Monroe County Surrogate's Court has been affixed.

WITNESS, Hon Edmund A Calvaruso, Judge of the Monroe County Surrogate's Court.

_____
Hon. Edmund A Calvaruso

*These Letters are Not Valid Without the Raised Seal of the Monroe County Surrogate's Court*

<u>Attorney for the Estate:</u>
**Mark J Valerio**
**Valerio & Kufta**
400 Andrews Street Suite 100
Rochester NY 14604